# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**

* * * * * * * * * * * * * * * * * * * *
| | |
|---|---|
| ALAN L. HAYWARD, | * |
| | *   No. 16-1539V |
| Petitioner, | *   Special Master Christian J. Moran |
| | * |
| v. | *   Filed: February 28, 2023 |
| | * |
| SECRETARY OF HEALTH | *   Attorneys' Fees and Costs; |
| AND HUMAN SERVICES, | *   Expert Rates |
| | * |
| Respondent. | * |

* * * * * * * * * * * * * * * * * * * *

Richard H. Moeller, Moore, Heffernan, et al., Sioux City, IA, for Petitioner;
Traci R. Patton, United States Dep't of Justice, Washington, DC, for Respondent.

**PUBLISHED DECISION AWARDING ATTORNEYS' FEES AND COSTS**[1]

On February 3, 2022, petitioner Alan Hayward moved for final attorneys' fees and costs. He is awarded **$88,910.39**.

\*   \*   \*

On November 17, 2016, petitioner filed for compensation under the Nation Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10 through 34. The petition alleged that the influenza vaccine he received on November 20, 2013,

---

[1] Because this published decision contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). This posting means the decision will be available to anyone with access to the internet. In accordance with Vaccine Rule 18(b), the parties have 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access.

which is contained in the Vaccine Injury Table, 42 C.F.R. § 100.3(a), caused him to develop left upper extremity weakness and significant loss of strength in his left arm and forearm. Once respondent contested entitlement, the parties retained experts, with petitioner retaining Dr. Lawrence Shields and Dr. Donald Marks while respondent retained Dr. Timothy Vartanian.

Petitioner sought an award of attorneys' fees and costs on an interim basis. Although attorneys' fees were awarded, petitioner had not established the reasonableness of the amount requested for the work of Dr. Shields and Dr. Marks. Those costs, therefore, were deferred. Interim Fee Decision, 2019 WL 960215 (Feb. 1, 2019).

To resolve the factual dispute regarding onset of petitioner's problem in his left arm, a hearing was held via video conferencing on May 21, 2020, On October 9, 2020, the undersigned issued his fact ruling. 2020 WL 6582184 (Fed. Cl. Spec. Mstr. Oct. 9, 2020). Thereafter, the parties entered into settlement negotiations and on November 15, 2021, the parties filed stipulation, which the undersigned adopted as his decision awarding compensation on the same day. 2021 WL 5827532 (Fed. Cl. Spec. Mstr. Nov. 15, 2021).

On February 3, 2022, petitioner filed a lengthy motion for final attorneys' fees and costs ("Fees App."). Petitioner requests attorneys' fees of $57,215.80 and attorneys' costs of $68,726.09 for a total request of $125,941.89. Pursuant to General Order No. 9, petitioner states that he has not personally incurred any costs or expenses to prosecute the petition in this case. Fees App. Ex. 4. On February 14, 2022, respondent filed a response to petitioner's motion. Respondent argues that "[n]either the Vaccine Act nor Vaccine Rule 13 contemplates any role for respondent in the resolution of a request by a petitioner for an award of attorneys' fees and costs." Response at 1. Respondent adds, however that he "is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case." Id at 2. Additionally, he recommends "that the special master exercise his discretion" when determining a reasonable award for attorneys' fees and costs. Id. at 3. Petitioner filed a reply on February 14, 2022, reiterating his belief that the requested fees and costs are reasonable.

On September 14, 2022, the undersigned issued an order requesting respondent address the reasonableness of petitioner's proposed expert costs. Respondent filed the requested response on October 19, 2022. The matter is now ripe for disposition.

\*   \*   \*

2

In this case, because petitioner was awarded compensation pursuant to a stipulation, he is entitled to a final award of reasonable attorneys' fees and costs. 42 U.S.C. § 300aa-15(e)(1). Thus, the question at bar is whether the requested amount is reasonable.

The Vaccine Act permits an award of reasonable attorney's fees and costs. §15(e). The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act. This is a two-step process. Avera v. Sec'y of Health & Human Servs., 515 F.3d 1343, 1348 (Fed. Cir. 2008). First, a court determines an "initial estimate … by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347-48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348. Here, because the lodestar process yields a reasonable result, no additional adjustments are required. Instead, the analysis focuses on the elements of the lodestar formula, a reasonable hourly rate and a reasonable number of hours.

In light of the Secretary's lack of objection, the undersigned has reviewed the fee application for its reasonableness. See McIntosh v. Sec'y of Health & Human Servs., 139 Fed. Cl. 238 (2018)

A.   Reasonable Hourly Rates

Under the Vaccine Act, special masters, in general, should use the forum (District of Columbia) rate in the lodestar calculation. Avera, 515 F.3d at 1349. There is, however, an exception (the so-called Davis County exception) to this general rule when the bulk of the work is done outside the District of Columbia and the attorneys' rates are substantially lower. Id. 1349 (citing Davis Cty. Solid Waste Mgmt. and Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)). In this case, all the attorneys' work was done outside of the District of Columbia.

Petitioner requests the following rates for the work of his counsel: for Mr. Richard Moeller, $285.00 per hour for work performed in 2018, $300.00 per hour for work performed in 2019, $341.00 per hour for work performed in 2020, $363.00 per hour for work performed in 2021, and $379.00 per hour for work performed in 2022; for Ms. Nikki Nobbe, $190.00 per hour for work performed in 2018 and $200.00 per hour for work performed in 2019; and for Ms. Kaitlin Boettcher, $220.00 per hour for work performed in 2021. These rates are consistent with what counsel has previously been awarded by the undersigned and other

3

special masters, and they shall be awarded herein. See, e.g., Zielinski v. Sec'y of Health & Human Servs., No. 18-1075V, 2021 WL 1115823, at *3 (Fed. Cl. Spec. Mstr. Feb. 23, 2021); Hayward v. Sec'y of Health & Human Servs., No. 16-1539V, 2019 WL 960215 (Fed. Cl. Spec. Mstr. Feb. 1, 2019).

### B. Reasonable Number of Hours

The second factor in the lodestar formula is a reasonable number of hours. Reasonable hours are not excessive, redundant, or otherwise unnecessary. See Saxton v. Sec'y of Health & Human Servs., 3 F.3d 1517, 1521 (Fed. Cir. 1993). The Secretary also did not directly challenge any of the requested hours as unreasonable.

Upon review of the submitted billing records, the undersigned finds that the majority of the time billed is reasonable. Counsel has done a particularly good job with the level of detail of the billing entries, which has made it easier for the undersigned to assess their reasonableness. The only causes for reductions are some entries by the paralegals for paying for medical records and mailing documents, which is a clerical/administrative task. Upon review, a reasonable reduction for these issues is $173.50. Petitioner is therefore awarded final attorneys' fees of $57,042.30.

### C. Costs Incurred

Like attorneys' fees, a request for reimbursement of costs must be reasonable. Perreira v. Sec'y of Health & Human Servs., 27 Fed. Cl. 29, 34 (Fed. Cl. 1992), aff'd, 33 F.3d 1375 (Fed. Cir. 1994). Petitioner requests a total of $68,726.09 in costs. Most of this amount ($67,300.00) is comprised of costs related to the work of petitioner's two medical experts. Dr. Shields and Dr. Marks. The remainder of the costs are for acquisition of medical records, and postage. These routine costs are reasonable and shall be fully reimbursed. The expert costs shall be discussed in greater detail.

#### I. Overview

Acting through his attorney Mr. Moeller, Mr. Hayward has retained two medical doctors as experts. These are Lawrence Shields, a neurologist, and Donald Marks, a specialist in internal medicine and who has a PhD in microbiology. Exhibits 19, 21. Dr. Shields and Dr. Marks have billed their work through a series of invoices, in excess of $100,000. However, Mr. Hayward has proposed a reasonable award for their services to be $67,300. Pet'r's Br., filed Feb. 3, 2022, at 36.

The Secretary contends that an appropriate award of compensation for both doctors would total around $15,000.00 – $20,000.00.  Resp't's Supp'l Br., filed Oct. 19, 2022, at 2.

## II. Standards for Adjudication

Reasonable expert fees are determined using the lodestar method, in which a reasonable hourly rate is multiplied by a reasonable number of hours.  Caves v. Sec'y of Health & Human Servs., 111 Fed. Cl. 774, 779 (2013).  Experts are expected to list the amount of time they spent on particular activities.  See Caves, 111 Fed. Cl. at 781-83; Morse v. Sec'y of Health & Human Servs., 89 Fed. Cl. 683 (2009).  Deficiencies in invoices may justify reductions from the amount requested.  See Abbott v. Sec'y of Health & Human Servs., 150 Fed. Cl. 421 (2020) (special master did not abuse his discretion in reducing expert's number of hours by 10% due to poorly explained activities); Lewis v. Sec'y of Health & Human Servs., 149 Fed. Cl. 308 (2020) (special master was not arbitrary in reducing number of expert's hours due to vagueness in invoices).

## III. Evaluation

Dr. Shields and Dr. Marks prepared a series of reports and a series of invoices.  The assessment of the reasonableness of their activities proceeds in a chronological order, beginning with Dr. Shields's first invoice.

### a.  Dr. Shields's Pre—Filing Review

Before Mr. Moeller filed the petition on Mr. Hayward's behalf in 2016, Mr. Moeller consulted Dr. Shields.  Pet'r's Br. at 12.  Dr. Shields indicates that he spent 3.5 hours reviewing records, analyzing the case, and conferring with Mr. Moeller.  Dr. Shields has charged $500.00 per hour for his work.

Mr. Moeller proposes that a reasonable rate for Dr. Shields's work in 2016 is $400.00 per hour.  Pet'r's Br. at 24-27.  A basis for this reduction includes previous rulings by special masters, such as Abbott v. Sec'y of Health & Hum. Servs., No. 14-907V, 2020 WL 8766524, at * 9 (Fed. Cl. Spec. Mstr. Dec. 4, 2020) and Bell v. Sec'y of Health & Hum. Servs., No. 13-709V, 2017 WL 1034481, at *3 (Fed. Cl. Spec. Mstr. Jan. 31, 2017).

5

A rate of $400.00 per hour is appropriate for a person with Dr. Shields's background and experience.[2] Thus, he will be compensated at this rate for his work before Mr. Moeller submitted the petition.

Although Dr. Shields could have described his activities with more detailed, the amount of time he spent reviewing the case on a preliminary basis (3.5 hours) appears reasonable. Thus, a reasonable compensation for this work is $400.00 per hour multiplied by 3.5 hours equals $1400.00.

b. Other Developments in the Litigation

The Secretary reviewed the evidence and summarized Mr. Hayward's medical history in approximately eleven double-spaced pages. Resp't's Rep., filed June 3, 2017, at 2-12. The Secretary recommended against an award of compensation due, in part, to the lack of an expert report. Id. at 13.

To facilitate the submission of expert reports, the undersigned issued a set of Final Instructions on August 3, 2017. These Instructions advised petitioner's experts to divide their tasks by thirty-minute increments. As discussed below, neither Dr. Shields nor Dr. Marks consistently followed this suggestion. Better compliance would have minimized disputes and may have resulted in a larger amount of compensation for Dr. Shields and Dr. Marks.

c. First Set of Expert Reports

Mr. Hayward submitted the initial reports from Dr. Shields and Dr. Marks on November 3, 2017. Dr. Shields's report was 76 pages, of which more than fifty pages concerned facts about Mr. Hayward. Dr. Shields cited more than eighty articles. Mr. Moeller has reduced the amount requested in compensation as set forth in the chart.

| Claims regarding Dr. Shields's First Report | | | |
|---|---|---|---|
| | Hourly Rate | Number of Hours | Total |
| Dr. Shields's Invoice, Exhibit 185 | $500.00 | 198.11 | $99,055.00 |
| Pet'r's Proposal | $425.00 | 95.2 | $40,460.00 |

---

[2] This rate will be adjusted for inflation, resulting in an hourly rate of $409.00 per hour for 2017, $423.00 per hour for 2018, and $450.00 per hour for 2020.

Some activities are excessive and/or unreasonable. Examples include the following:

| Examples of Excessive and Unreasonable Activities | | |
|---|---|---|
| Date | Event | Hours |
| 7/20/2017 | Reading Instructions | 1.5 |
| 7/20/2017 | Vaccine Injury Table | 1.5 |
| 7/21/2017 | National Vaccine Injury Compensation | 1.5 |
| 9/25/2017 | Organizing Bibliography | 8 |

While the number of entries that are so obviously unreasonable are relatively few, their presence raises questions about the accuracy of Dr. Shields's timekeeping and/or billing practice. Nevertheless, the remainder of his invoice has been reviewed to determine the reasonableness of the activities.

Dr. Shields's first invoice is divided into more than a dozen topics of which most concern medical issues. Within a given topic, Dr. Shields has recorded how much time he spent researching the issue, reading medical articles, and writing the section of his report. See Pet'r's Br. at 30-32, Exhibit 185. The evaluation is presented in the following chart:

| **Evaluation of Time Charged for Dr. Shield's First Report** | | | | |
|---|---|---|---|---|
| Report Pages | Topic | Hours Charged on Invoice | Reasonable Hours | Notes |
| 3-51 | Facts, Reviewing Records, Physical Exam | 108.00 | 15.00 | Even 15 hours is a relatively long time for reviewing records and writing facts. Medical records were quoted. |
| 51-59 | Differential Diagnosis | 2.00 | 2.00 | |
| 61-63 | Cervical Radiculopathy (Not Counting Bibliography, Organization and Analysis) | 1.50 | 1.50 | |

| | | | | |
|---|---|---|---|---|
| 60-61 | Thoracic Outlet Syndrome | 3.25 | 2.00 | |
| 65 | Monophasic Multiplex | 9.75 | 1.50 | |
| Unclear | Immunization | 7.25 | 1.00 | Many articles were off topic and duplicates Dr. Marks |
| 65-69 | Hirayama | 24.11 | 5.00 | Reading more than 30 articles was excessive |
| 69-72 | Parsonage-Turner Syndrome (including lumbro-sacral and shoulder disease) | 8.50 | 7.50 | |
| 59-60 | Diabetes | 14.50 | 2.50 | An experienced neurologist knows about diabetes. |
| | TOTAL | | 38.00 | |
| | Hourly Rate | $409.00 | | |
| | Amount Awarded | | | $15,542.00 |

In short, a reasonable amount of compensation for Dr. Shields's writing his first report is $15,542.00.

### d. Dr. Marks's First Report

Dr. Marks has a specialty in immunology and his role was to explain how a vaccine could cause an adverse reaction resulting in a neurologic disease, which Dr. Shields identified. The retention of two experts was reasonable. See Pet'r's Br. at 16-18.

Mr. Hayward seeks compensation for Dr. Marks's effort to complete his first report, which was eighteen pages. Exhibit 20. The proposals for compensation are as follows:

| Claims regarding Dr. Marks's First Report | | | |
|---|---|---|---|
| | Hourly Rate | Number of Hours | Total |
| Dr. Marks's Invoice, Exhibit 188 | $300.00 | 29 | $8,700.00 |

8

| | | | |
|---|---|---|---|
| Pet'r's Proposal | $300.00 | 25.5 | $7,650.00 |

An assessment shows the following reasonable activities.

| **Evaluation of Time Charged For Dr. Marks's First Report** | | | |
|---|---|---|---|
| Activity | Hours on Invoice | Reasonable Amount of Time | Notes |
| Time with Dr. Shields | 11 | 2 | The critical issue from Dr. Shields was diagnosis and that information is readily found by reading his report. Other activities were not explained. |
| Literature Review | 6 | 5 | Many articles were not relevant. However, a larger amount of time is awarded due to the relatively low hourly rate. |
| Drafting and "Additional Work" | 8 | 7 | |
| Work with Counsel | 4 | 4 | Concerning but accepted |
| Total | | 18 | |
| Hourly Rate | $300 | | |
| Amount Awarded | | | $5,400 |

e. The Secretary's Resp.

After Mr. Hayward submitted the reports from Dr. Shields and Dr. Marks, the Secretary countered with a report from a single expert, Dr. Vartanian. Dr. Vartanian's report is 27 pages (plus additional pages for references), including sections on Dr. Vartanian's qualifications and his review of Mr. Hayward's medical records. As to Dr. Shields's assertion that Mr. Hayward suffered from brachial neuritis, Dr. Vartanian proposed cervical radiculopathy. Exhibit A at 16-19. With respect to Dr. Marks's opinion regarding and immune-mediated process, Dr. Vartanian wrote more pages. See Id. at 19-27. Almost all this section was about diseases of the central nervous system and peripheral nervous system

9

because Dr. Marks had cited articles on those topics in his report. For brachial neuritis, which is the condition Mr. Hayward alleges the vaccine caused, Dr. Vartanian discussed two articles. Id. at 19-20.

f. Second Set of Expert Reports

In reply to Dr. Vartanian, Mr. Hayward obtained reports from Dr. Shields and Dr. Marks. Dr. Shields's second report was twenty-two single-spaced pages. Exhibit 130. The associated requests for compensation are presented below.

| Claims regarding Dr. Shields's Second Report | | | |
|---|---|---|---|
| | Hourly Rate | Number of Hours | Total |
| Dr. Shields's Invoice, Exhibit 186 | $500.00 | 47.5 | $23,750.00 |
| Pet'r's Proposal | $425.00 | 28.5 | $12,112.50 |

A review of Dr. Shields's work product and his invoice indicates that much of the time claimed was excessive and unreasonable.

| **Evaluation of Time Charged For Dr. Shields's Second Report** | | | |
|---|---|---|---|
| Activity | Hours on Invoice | Reasonable Amount of Time | Notes |
| Reviewing Dr. Vartanian's Report | 6.5 | 2 | Nearly a full work day to review one report is unreasonable. |
| Reviewing Dr. Shield's Report | 5 | 1 | This is Dr. Shield's own work product. |
| Reviewing Dr. Marks's Report | 2 | 1 | The report is not lengthy. |
| Excerpting Medical Records and Facts | 10 | 4 | Much of this section is quoting other materials. |
| Review of Literature | 5 | 1 | Dr. Vartanian did not cite many articles in disputing diagnosis |
| Medical Literature to Support | 1 | 1 | |

10

| Report, Writing and Editing | 18 | 2 | Description is vague and combines many steps into one entry. Most of pages 12-22 from Dr. Shields's second report appears copied from other material. |
|---|---|---|---|
| Total | | 12 | |
| Hourly Rate | $425 | | |
| Amount Awarded | | | $5,100 |

The second report from Dr. Marks was written in a relatively colloquial tone and did not cite any additional medical articles. Its length was three pages. Exhibit 131.

The requested compensation for Dr. Marks's work is:

| Claims regarding Dr. Marks's Second Report | | | |
|---|---|---|---|
| | Hourly Rate | Number of Hours | Total |
| Dr. Marks's Invoice, Exhibit 189 | $300.00 | 25 | $7,500.00 |
| Pet'r's Proposal | $300.00 | 22 | $6,600.00 |

Some of the requested hours reflect an excessive and unreasonable amount of time.

| Evaluation of Time Charged For Dr. Marks's Second Report | | | |
|---|---|---|---|
| Activity | Hours on Invoice | Reasonable Amount of Time | Notes |
| Literature Review | 11.5 | 1 | Dr. Vartanian cited few new articles. |
| Review | 4 | 1 | What was "reviewed" is not clear. |
| Reply (assumed to be drafting) | 9.5 | 5 | |
| Total | | 7 | |
| Hourly Rate | $300 | | |

11

| Amount Awarded | $2,100 |
|---|---|

### g. Finding of Facts

After the experts submitted their reports, the undersigned held a hearing to receive testimony from percipient witnesses, who were knowledgeable about the onset of Mr. Hayward's shoulder problem. The undersigned resolved questions of fact. Fact Finding Ruling, issued Oct. 9, 2020. This ruling was eight pages.

### h. Final Consultation with Dr. Shields

Mr. Moeller was directed to consult with Dr. Shields to see whether the Fact Finding Ruling altered his opinion. Dr. Shields presented an invoice claiming 3.75 hours for this task.

The amount of time requested to review a document fewer than ten pages is excessive and unreasonable. A reasonable amount of time to review the document and to consult with Mr. Moeller is two hours. Accordingly, at a rate of $450.00 per hour, a reasonable charge for this activity is $900.00.

## IV. Summary

The various awards are compiled into this summary chart:

| Event | Amount |
|---|---|
| Dr. Shields's Pre-Filing Review | $1,400.00 |
| Dr. Shields's First Report | $15,542.00 |
| Dr. Marks's First Report | $5,400.00 |
| Dr. Shields's Second Report | $5,100.00 |
| Dr. Marks's Second Report | $2,100.00 |
| Dr. Shields's Final Consultation | $900.00 |
| TOTAL | $30,442.00 |
| | |
| Dr. Shields's Portion | $22,942.00 |
| Dr. Marks's Portion | $7,500.00 |

The amount awarded (approximately $30,000.00) is less than the amount that Mr. Moeller proposed (approximately $67,000.00). On the other hand, the

Secretary argued that a reasonable range was between $15,000.00 and $20,000.00. While the parties' respective positions potentially establish a floor and a ceiling, the analysis does not tightly follow the lodestar methodology. This methodological flaw is particularly acute for the Secretary as the Secretary proposed amounts based on past cases without commenting upon either the proposed hourly rate or, more critically, the proposed number of hours. Such an approach may not be upheld. See Guerrero v. Sec'y of Health & Hum. Servs., 120 Fed. Cl. 474, 482 (2015) (rejecting an analysis based upon median awards). The foregoing evaluation does not rely upon a median analysis, but instead followed the lodestar methodology. The lodestar approach has produced the amount as set forth above. This finding of an amount somewhere between a petitioner's number and the respondent's number suggests the outcome is roughly just. See Fox v. Vice, 563 U.S. 836, 838 (2011) (indicating that trial courts may use "rough justice" in awarding attorneys' fees).

Petitioner is therefore awarded final attorneys' costs of $31,868.09.

D.  Conclusion

The Vaccine Act permits an award of reasonable attorney's fees and costs. 42 U.S.C. § 300aa-15(e). Accordingly, the undersigned awards a lump sum of **$88,910.39** (representing $57,042.30 in attorneys' fees and $31,868.09 in attorneys' costs) as a lump sum in the form of a check jointly payable to petitioner and Mr. Richard Moeller.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[3]

**IT IS SO ORDERED**.

s/Christian J. Moran<br>
Christian J. Moran<br>
Special Master

---

[3] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.